**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-cr-458 (RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD T. CROSBY, JR.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of the December 4, 2023, trial scheduled before this Court in this case. The brief is divided below into a summary of the charges and elements (including relevant stipulations); a summary of the anticipated government witness testimony; and a discussion of certain evidentiary or other legal issues anticipated to arise.

### Charges and Elements

Crosby, Jr. is charged in a five-count indictment with one felony count and five misdemeanor counts. In the felony count, the government must establish the following elements beyond a reasonable doubt at trial:

### Count One: Obstruction of an Official Proceeding

Count One charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law. Count One also charges the defendant with aiding and abetting others to commit that offense.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant attempted to or did obstruct or impede an official proceeding. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly. To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In addition, the First Amendment to the United States Constitution affords people the right to speak, assemble, and petition the Government for grievances. Accordingly, an individual who does no more than lawfully exercise those rights does not act corruptly. In contract, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.

**Count Two: Entering or Remaining in a Restricted Building**

Count Two charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so. The parties have stipulated: "Richard Crosby, Jr. is depicted entering the Capitol at 2:56 p.m. through the Parliamentarian Door in Exhibit 401 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 412." *See* proposed exhibit 1004.

Second, the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President.

**Count Three: Disorderly or Disruptive Conduct in a Restricted Building**

Count Three charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds. The parties have stipulated: "Richard Crosby, Jr. is depicted entering the Capitol at 2:56 p.m. through the Parliamentarian Door in Exhibit 401 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 412." *See* proposed exhibit 1004.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions. The parties have stipulated: "At approximately 2:12 p.m. . . . Senators evacuated the Senate chamber. The Senate was in recess until 8:06 p.m." *See* proposed exhibit 1000. Further, "[t]he House recessed from 2:29 p.m. to 9:02 p.m." *Id*.

### Count Four: Entering and Remaining on the Floor of Congress

Count Four charges the defendant with the misdemeanor violation of entering and remaining on the floor of Congress, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate.

Second, the defendant did so willfully and knowingly.

Third, the defendant was not authorized to do so pursuant to rules adopted or authorization given by that House.

### Count Five: Disorderly Conduct in a Capitol Building

Count Five charges the defendant with the misdemeanor violation of disorderly conduct in a Capitol building, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings. The parties have stipulated: "Richard Crosby, Jr. is depicted entering the Capitol at 2:56 p.m. through the Parliamentarian Door in Exhibit 401 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 412." *See* proposed exhibit 1004.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either house of Congress. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Third, the defendant acted willfully and knowingly.

### Count Six: Parading, Demonstrating, or Picketing in a Capitol Building

Count Six charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings. The parties have stipulated: "Richard Crosby, Jr. is depicted entering the Capitol at 2:56 p.m. through the Parliamentarian Door in Exhibit 401 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 412." *See* proposed exhibit 1004.

Second, the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding

or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.

### Summary of Government Witness Testimony/Evidence

The Government intends to call the following witnesses, and seek admission of the following exhibits, to provide evidence to find beyond a reasonable doubt that the defendant committed the charged offenses. But, through stipulation, the parties have agreed:

1. "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in both the House and Senate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020… At approximately 2:12 p.m., Vice President Pence evacuated the Senate chamber, and approximately one minute later the senator who had become the presiding officer in Vice President Pence's absence declared that the Senate would stand in recess. Senators evacuated the Senate chamber. The Senate was in recess until 8:06 p.m." Proposed exhibit 1000.

2. "The United States Capitol Police (USCP) operated and maintain closed-circuit video monitoring and recording equipment that . . . [captured] a fair and accurate depiction of the events at the U.S. Capitol on January 6, 2021 . . .. The video footage is authentic in that it is what it purports to be." Proposed exhibit 1001.

3. "Individuals attending the events at the Capitol used personal cameras to capture the events on January 6, 2021. . . . The video footage is authentic in that it is what it purports to be." Proposed exhibit 1002.

4. Richard Crosby's cell phone was seized and data was collected from it. . . . Data presented from the cell phone is authentic." Proposed exhibit 1003.

5. "Richard Crosby, Jr. is depicted entering the Capitol at 2:56 p.m. through the Parliamentarian Door in Exhibit 400 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 406. Richard Crosby, Jr. is the individual depicted at the Capitol on January 6, 2021, wearing glasses, the blue shirt, the black jacket, and the red 'Make America Great Again' baseball cap." Proposed exhibit 1004.

The admission of identified pieces of evidence is the subject of the pretrial conference set for November 21, 2023.

**United States Secret Service Inspector Lanelle Hawa** will provide overview testimony regarding the restricted area in place at the United States Capitol on January 6, 2021. Inspector Hawa will likely testify that her role within the Liaison Division required her to coordinate visits of Secret Service protectees to the United States Capitol. Specifically for January 6, 2021, that included her work coordinating the visit of then-Vice President Michael Pence.

Inspector Hawa will also provide testimony regarding proposed exhibits 300, 301, and 302. In exhibit 300, Inspector Hawa will likely testify that then-Vice President Michael Pence was in the Capitol on January 6, 2021 and was moved to a secure location following the breach of the building.



*Figure 1*: Screengrab of proposed exhibit 300. Inspector Hawa circled in yellow. Then-Vice President Michael Pence circled in Red.

Inspector Hawa finally will provide testimony of generally where then-Vice President Pence was during the riot, and when he returned to preside over the joint session of Congress. She will outline that at all times during the day, then-Vice President Pence was within the secure perimeter around the grounds of the Capitol.

**A Member of the United States Capitol Police** will provide overview testimony regarding the events at the United States Capitol on January 6, 2021. The member will have been working on January 6, 2021 and will provide the Court with an overview of the events that occurred at the Capitol, as well as more specific view of the defendant's actions captured on United States Capitol Police Surveillance.



*Figure 2*: The parties have stipulated: "Richard Crosby is depicted entering the Capitol at approximately 2:56 p.m. through the Parliamentarian Door in Exhibit 400 and leaving the Capitol at 3:10 p.m. through the Senate Carriage Door in Exhibit 406." See proposed exhibit 1004.

Using United States Capitol Police Surveillance, the witness will provide testimony of the path used by the defendant while he was within the Capitol Building. The defendant's path through the Capitol will be shown as:





*Figure 3*: Path taken by the defendant depicted in red.

The witness may also provide testimony laying the foundation for the admission of CSPAN footage depicting what the defendant was doing while in the Senate Chamber.

**United States Capitol Police Sgt. Aaron Brodsky (retired)** will provide testimony related to the events occurring near the North Appointment Desk in the Capitol at approximately 3:00 p.m.



*Figure 4*: Screengrab from proposed Exhibit 401A. The defendant is circled in red.

Sgt. Brodsky will likely testify that he was positioned near the North Appointment Desk as a group of rioters approached. While blocking the rioters, the defendant pushed past Sgt. Brodsky so Sgt. Brodsky grabbed the defendant and pulled him back. The group, including the defendant then all pushed past Sgt. Brodsky and the other outnumbered officers.

**United States Capitol Police Officer Mark Gazelle** will provide testimony to the events occurring in the Chambers of Congress on January 6 and what happened as a result of the defendant and others entering the Capitol building.  Officer Gazelle is expected to testify as to the parts of the Senate Chamber and the rules of the Senate.  Officer Gazelle is also expected to testify about

his actions on the Senate Floor on January 6, evacuating Senators, the videos of the defendant on the Senate Floor and the resumption of the Congressional proceeding.  Officer Gazelle will also provide testimony laying the foundation for the admission of CSPAN footage depicting what the defendant was doing while in the Senate Chamber.

Officer Gazelle will likely testify that that the Senate did not adopt any rule that would have allowed the defendant or any other member of the public to enter the Senate Chamber on January 6, 2021.

**Federal Bureau of Investigation Task Force Officer Charles Bascetta** will outline the investigation into the defendant's actions at the Capitol on January 6, 2021. TFO Bascetta will likely testify that as the case agent for this investigation, he searched the contents of the defendant's phone and interviewed the defendant at the defendant's residence on April 21, 2021. Also, through stipulation, he will provide the context for when the defendant was interviewed by agents with the FBI, and the search of the defendant's home.



*I am individual in middle with red MAGA hat*
*Richard Crosby Jr.*  [signature]  *4/21/21  4:53 PM*

Figure 6: Screengrab TFO Bascetta showed to the defendant, who acknowledged and signed that he was on the Senate dais on January 6.

TFO Bascetta will also testify about proposed Exhibit 601, a YouTube video the FBI found wherein the defendant is interviewed on January 6 by a reporter from WJLA, ABC News Channel 7.  The defendant told the reporter, "There were other people who somehow breached one of the doors on the west side near the scaffoldings, so we were able to get inside there…Myself and maybe 15 or 20 others were able to get into the Senate Chambers where we saw the desk, the voter rolls with the yeas and nays and Mike Pence's bible."  He further states: "Basically, just, ah, we want this to be a message to the system that has failed us time and time again and has not allowed us a seat at the table.  We are not going to leave the city until we have a seat at the table, and we are awaiting President Trump's orders."  Within proposed Exhibit 601, the defendant states: "I know on some of the protestors outside (the police) were using tear gas, rubber bullets and the

batons." When asked by the reporter about the illegal nature of what he'd just done, the defendant further states: "In terms of legality, I think the real crime here is stealing an election. That's highly illegal. We have massive evidence of that in a number of swing states which would have totally turned the election 100 percent. So, I think that we've exhausted our options here and we need to at all costs make sure that we have election integrity and make sure President Trump knows that we are here for him."

TFO Bascetta will also provide testimony regarding text messages the defendant sent that were found on the defendant's phone pursuant to a court-authorized search. TFO Bascetta will provide the testimony to give this Court insight into what was the defendant's intent during his actions at the Capitol on January 6, 2021, through conversations the defendant had before January 6, his actions at the Capitol on January 6, 2021, and after leaving the Capitol.

TFO Bascetta will also provide testimony regarding the search of the defendant's home and vehicle and the items seized. He will likely testify that the red "Make America Great Again" hat worn by the defendant on January 6, 2021, was secured.

## Anticipated Legal Issues

Through consultation with opposing counsel, and extensive discussions regarding the trial and possible resolutions short of trial, the Government believes the overarching legal issue that will be presented to this Court during trial will be whether the defendant's intent met the requirement for a violation of 18 U.S.C. § 1512(c)(2).

## Level of Planning Required

The specific intent required to violate 18 U.S.C. § 1512(c)(2) is—while committing the actus reus—that an individual intended to obstruct, or impede, the official proceeding. Although this intent must be present at the time the crime is committed, the actus reus does not occur until

an act is done *corruptly*. This "timing issue" gets missed because there are also *lawful* ways to impede official proceedings and evidence of having that specific intent during *lawful* ways to impede provides evidence of the specific intent during *unlawful* ways to impede.

The government's case does not require the defendant to have intended to break into the Capitol when he made plans to travel to D.C. for the rally at the ellipse to prove that he was in violation of 18 U.S.C. § 1512(c)(2). But having the intent to affect the election during his planning makes it more likely that the defendant had the same specific intent when he then acted corruptly upon that intent.

As will be outlined at trial, the official proceeding—the certification of the electoral college vote—was impeded because the defendant entered the Senate Chamber because he wanted to "send a message to the system that has failed us time and time again and has not allowed us a seat at the table" and because he was demanding "a seat at the table." Proposed Exhibit 601. Although this mens rea is present throughout the entire day of January 6, 2021, acting corruptly upon that intent is the wrong Congress sought to criminalize.

The defendant acted corruptly when he moved past barriers to keep him off the Capitol grounds; he entered the Capitol Building; he pushed past police who pulled him back, only for the defendant to push through again; he entered the Senate Chamber; and climbed on the Senate dais. The defendant sought to interfere/impede the certification of the electoral college vote and acted corruptly in his attempt to achieve that goal.

The government need not show that the defendant intended to commit his criminal acts before he committed them. Just that he intended a particular result, and corruptly acted to obtain that result.

14

### Timing of Obstruction

The parties have stipulated that each house of Congress recessed prior to the defendant entering the building and returned after the defendant had already been pushed out of the building. But the issue at trial is not whether Congress was *in recess* during the defendant's corrupt acts; the issue is whether Congress could *return from recess* during the defendant's corrupt acts. Congress could not return from recess while the defendant was unlawfully trespassing within the Capitol.

For as long as Congress was in recess, Congress was not fulfilling its Constitutionally required duty of certifying the 2020 Presidential election. At trial, the government will present evidence that the recess was required to ensure the safety of the Senate and members of the House of Representatives. Also, that this recess was required to last until each rioter was removed from the building, including the defendant, Richard T. Crosby, Jr.

### Adoptive Admission

Video footage filmed by CSPAN, together with audio recorded on a nearby open telephone line, depicts the defendant on the Senate dais on January 6, 2021 with Jacob A. Chansley, a/k/a "Jacob Angeli," a/k/a "The QAnon Shaman," as Chansley offered a prayer that included, "Thank you for allowing the United States of America to be reborn. Thank you for allowing us to get rid of the communists, globalists, and traitors within our government." At points during the prayer, the defendant raised his hand, as depicted below, and yelled in agreement with Chansley as depicted in Proposed Exhibit 403. At the conclusion of the prayer, the defendant yelled "Amen!" This footage and audio was also simultaneously captured by a reporter from *The New Yorker* in Proposed Exhibit 600.



In doing so, under the circumstances, the defendant manifested an adoption or belief in the truth of Chansley's statements. Accordingly, Chansley's prayer is admissible against the defendant as an adoptive admission pursuant to Federal Rules of Evidence 801(d)(2)(B).

The defendant has been charged with, among other counts, violating 18 U.S.C. §§ 1512(c)(2) and 2, for attempting to obstruct and obstructing, influencing or impeding an official proceeding before Congress by entering and remaining in the Capitol without authority. As discussed, *supra,* to act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both.

One way that the government intends to prove that the defendant acted corruptly is by introducing into evidence at trial Chansley's statements on the dais as statements that have been adopted as true by the defendant. Under Federal Rule of Evidence 801(d)(2)(B), a statement is not hearsay if it is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth. This exception is firmly rooted in American jurisprudence and no

independent inquiry under the Confrontation Clause is required. *United States v. Beckham*, 296 U.S. App. D.C. 311, 968 F.2d 47, 51-52 (1992). Fed Rules Evid R 801(d)(2)(B). *See also, United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006). In other words, the government intends to offer the recording of Chansley's statements as evidence against the defendant without calling Chansley to testify.

When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such, that under the circumstances, the defendant would have been induced to respond, and whether there are sufficient foundational facts from which the fact finder could infer that the defendant heard, understood, and acquiesced in the statement. *United States v. Robinson*, 275 F.3d 371, 382-83 (4th Cr. 2001). A party may manifest adoption of a statement in any number of ways, including words, conduct, or silence. See *Marshall v. Young*, 833 F.2d 709, 716 n.3 (7th Cir. 1987). A statement need not be directed at the defendant for it to be admissible as the defendant's admission. *United States v. Watson*, 552 F. App'x 480, 486 (6th Cir. 2014). See, e.g., *United States v. Grunsfeld*, 558 F.2d 1231, 1237 (6th Cir. 1977) (defendant's silence when introduced to third party as his codefendant's "business partner" was an adoptive admission).

It is clear from the video and audio that the defendant heard, understood and acquiesced in Chansley's statements because the defendant repeatedly affirmed Chansley's statement verbally by yelling "yes sir" and through gestures during and after Chansley's statements including affirmatively nodding, raising his hand and yelling "Amen!"

Date: November 14, 2023

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Douglas G. Collyer*
DOUGLAS G. COLLYER
Assistant United States Attorney
NDNY Bar No. 519096
14 Durkee Street, Suite 340
Plattsburgh, NY 12901
(518) 314-7800
Douglas.Collyer@usdoj.gov

ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
Adam.Dreher@usdoj.gov