UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

        vs.                                     CRIMINAL NO. 1:21-CR-458 (RJL)

RICHARD CROSBY, JR.                    November 30, 2023

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM INTRODUCING THE PRAYER IN EXHIBITS 403 AND 600 AS AN ADOPTIVE ADMISSION**

The central issue in dispute in this case is whether Mr. Crosby possessed the requisite intent to obstruct Congress. To prove Mr. Crosby's intent, in part, the government plans to introduce video evidence in Government Exhibits 403 and 600 ("GX 403" and "GX 600," respectively). This evidence depicts a prayer offered by a third-party, to which Mr. Crosby "affirmatively nod[s], rais[es] his hand[,] and yell[s] 'Amen!'" (ECF No. 60 at 17.) The government argues this prayer is admissible against Mr. Crosby as an adoptive admission under Federal Rule of Evidence 801(d)(2)(B). Mr. Crosby moves the Court to exclude such evidence.

**BACKGROUND**

On January 6, 2021, Mr. Crosby entered the Capitol and then proceeded into the Senate chamber, where he remained for six minutes. The Senate was adjourned nearly 45 minutes prior to Mr. Crosby entering the chamber, and it remained so for six hours. While Mr. Crosby was in the Senate chamber, Jacob A. Chansley (a/k/a "Jacob Angeli," or "The QAnon Shaman") ("Mr. Chansley") offered a prayer:

> Thank you, Heavenly Father, for gracing us with this opportunity. Thank you, Heavenly Father, for this opportunity to stand up for our god-given, unalienable rights. Thank you, Heavenly Father, for taking the inspiration needed to these police officers to allow us into this building. *[Mr. Crosby: "Yes, Lord."]* To allow us to exercise our rights. To allow us to send a message to all the tyrants, the communists, and the globalists, that this is our nation, not theirs. *[Mr.*

*Crosby: "Yes."]* That we will not allow America, the American way, the United States of America to go down. Thank you, divine, omniscient, omnipotent, and omnipresent creator god, for filling this chamber with your white light of love, your white light of harmony. Thank you for filling this chamber with patriots that love you and that love Christ. Thank you, divine, omniscient, omnipotent, and omnipresent creator god, for blessing each and every one of us here and now. Thank you, divine creator god, for surrounding and filling us with the divine, omnipresent white light of love and protection, peace and harmony. Thank you for allowing the United States of America to be reborn. Thank you for allowing us to get rid of the communists, the globalists, and the traitors within our government. We love you and we thank you, in Christ's holy name we pray, amen! *[Mr. Crosby: Amen!]*

The government plans to offer video evidence that Mr. Crosby "affirmed" the entirety of the prayer "verbally" and "through gestures," such as "affirmatively nodding, raising his hand[,] and yelling 'Amen!'" (ECF No. 60 at 17.) The government argues Mr. Chansley's prayer is admissible against Mr. Crosby as an adoptive admission under Federal Rule of Evidence 801(d)(2)(B) because the defendant "manifested an adoption or belief in the truth of Chansley's statements." (*Id.* at 16.) In particular, the government argues that the "truth of Chansley's statements" proves Mr. Crosby's corrupt intent. (*Id.*) Mr. Crosby respectfully disagrees.

## LAW AND ARGUMENT

An out-of-court statement, such as Mr. Chansley's, is admissible against a defendant only if the statement "is one the [defendant] manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). The government bears the burden of showing Mr. Crosby "understood and *unambiguously* assented" to *each* of Mr. Chansley's statements. *United States v. Beckham*, 968 F.2d 47, 52 (D.C. Cir. 1992) (emphasis added); *cf. United States v. Datz*, 61 M.J. 37, 43 (C.A.A.F. 2005) (collecting cases, including *Beckham*) ("When a statement is offered as an adoptive admission, the proponent must present sufficient proof to support a finding that the party against whom the statement is offered heard, understood, and acquiesced in the statement."). Where the government seeks to

introduce an entire set of statements as an adoptive admission (such as a prayer with wide-ranging invocations), the government bears the burden of showing the defendant adopted that set in its entirety. *Compare United States ex rel. Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 211, 221 (D.D.C. 2017) (precluding proponent from introducing an entire report as an adoptive admission but allowing that proponent to "introduce specific statements" that party opponent "unambiguously assented to") and *United States v. Safavian*, 435 F. Supp. 2d 36, 43–44 (D.D.C. 2006) (admitting, based on "context and content," 12 out of 360 reviewed e-mails as adoptive admissions, and precluding introduction of other emails where defendant did "not clearly demonstrate his adoption of the contents") *with United States v. Beckham*, 968 F.2d 47, 51–52 (D.C. Cir. 1992) (admitting statement of third party as adoptive admission where, in response to a *single*, clear statement of third party that "he could get another rock of crack" from the defendant, defendant "immediately" "walked over to a stash of crack" and "open[ed] it").

I.   **The government has not shown Mr. Crosby "understood" the "truth" of Mr. Chansley's statements.**

Mr. Crosby cannot "manifest" a "belief" in the "truth" of a statement if he does not know what the statement means. The government tells the Court, without showing, that Mr. Crosby "understood" the entirety of Mr. Chansley's prayer. (ECF No. 60 at 17.) In so doing, the government ignores reality: religious language—and prayer, in particular—is susceptible to competing, subjective interpretations. To see America "reborn," as Mr. Chansley prays, may mean something different to each Mr. Chansley, Mr. Crosby, the government, and the millions who hold dearly to their respective religious traditions.[1]

---

[1] The government treads dangerous territory. This is not the first time the government has imputed its preferred meaning onto Mr. Crosby's expression of religious belief. As stated in Mr. Crosby's companion motion to exclude

3

Mr. Chansley prescribes no concrete action, leaves the concept of America's "rebirth" undefined, and instead celebrates ridding America of "communists, globalists, and traitors." Because Mr. Crosby did not know Mr. Chansley prior to encountering him in the Senate chamber, he could not have known what Mr. Chansley intended to convey through *each* abstract statement in his prayer.

The government suggests Mr. Crosby adopted not only Mr. Chansley's words, but also their meaning—*as the government has defined it*. Mr. Crosby's "amen," however, says nothing of the meaning Mr. Crosby ascribed to Mr. Chansley's words. For example, the government cannot articulate how Mr. Crosby "manifests" a "belief" in the "truth" of America's "rebirth." To say America has been "reborn" is to invite a multitude of interpretations. Whereas the government argues this "amen" proves Mr. Crosby acted with *unlawful* means or purpose to obstruct (*see* ECF No. 60 at 16), his "amen" could just as well show Mr. Crosby's subjective desire for a national spiritual awakening.

A prayer is not like the police interrogation in *Beckham* or the informational email in *Safavian*. In *Beckham*, a police officer interviewed the defendant's friend, and the defendant's friend told the officer that "he could get another rock of crack" from "his buddy," the defendant. 968 F.2d 47, 52 (D.C. Cir. 1992). In response, the defendant "indicated his endorsement" of his friend's statement when, in response, the defendant "immediately got up from his chair, walked over to a stash of crack that was packaged for distribution, and began to open it." *Id.* The D.C. Circuit affirmed the trial

---

Government Exhibits 506, 506A, and 508, "[F]aith is a highly personal, profound, and nuanced part of life that varies from person to person. Drawing the sweeping conclusions the government asserts from the narrow and temporally attenuated religious evidence it has presented, is simply beyond the competence of the legal system."

4

court's admission of this evidence, stating the defendant responded "directly" to his friend's statement. That statement "indicated [the defendant's] intent to distribute the drugs he possessed." *Id.*

Meanwhile, in *Safavian*, the Court admitted emails forwarded by the defendant to a third-party. 435 F. Supp. 2d 36, 43–44 (D.D.C. 2006). In the original emails, GSA officials discussed "the hurdles that confronted the possible disposition" of GSA property. Government's Mot. at 12, *Safavian*, No. 05-370 (PLF) (D.D.C. Apr. 4, 2006), ECF No. 66. The defendant forwarded these emails with the comment, "This is the type of bureaucracy I'm dealing with. I am still running the traps on the l [sic] year lease." *Id.* The government argued the defendant "suggested that the e-mails accurately described the obstacles . . . faced in obtaining the GSA property," *id.* at 13, and the Court agreed, 435 F. Supp. 2d at 43–44. The Court admitted this evidence as an adoptive admission. *Id.*

This case is distinguishable. The meaning of Mr. Chansley's statements is not nearly as clear as the friend's statement in *Beckham* or the GSA's descriptions in *Safavian*. Mr. Chansley was not inviting Mr. Crosby to sell him crack, nor was Mr. Chansley describing the steps Mr. Crosby must take to purchase property from the federal government. Instead, Mr. Chansley shouted aloud a wide-ranging series of abstract invocations, each of which was ambiguous and malleable to competing interpretations. These invocations were not directed at Mr. Crosby, but rather at a god who is worshipped by millions across the country in countless ways. To say, as the government does, that Mr. Crosby's "amens" "manifest" a "belief" in the "truth" of these invocations is to invite the Court to dissect Mr. Crosby's subjective religious beliefs. Such an inquiry is inappropriate and beyond the Court's judicial function. *Cf. Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981) ("Courts are not arbiters of scriptural interpretation.").

If the government suggests Mr. Crosby ascribed a specific meaning to Mr. Chansley's words and adopted that meaning, the government—not Mr. Crosby—bears the burden of showing Mr.

5

Crosby indeed adopted that meaning. *Cf. United States v. Datz,* 61 M.J. 37, 43–44 (C.A.A.F. 2005) (holding government did not meet burden of showing appellant "understood [a] question and unequivocally adopted the predicate of the question as his own," where the question was ambigu[ous] and contained "compound elements"). The government cannot meet its burden. As such, Mr. Crosby moves the Court to preclude the government from offering the entirety of Mr. Chansley's prayer as an adoptive admission.

II.     **Mr. Crosby did not adopt the entirety of Mr. Chansley's prayer.**

Even if the government can show Mr. Crosby understood the "truth" of Mr. Chansley's statements, it does not establish which statements Mr. Crosby adopted. Unlike the friend's *single*, clear statement in *Beckham*, the prayer here is a wide-ranging series of abstract invocations. The prayer is not one, long statement; instead, the entire prayer is like the entire report at issue in *United States ex rel. Landis v. Tailwind Sports Corp.* (which the *Landis* Court excluded), and each invocation is like each conclusion within the report (which the *Landis* Court considered, one-by-one). 292 F. Supp. 3d 211, 221 (D.D.C. 2017) ("[T]here is no statement from USPS in the record that unambiguously assents to the entirety of any report."); *see Safavian*, 435 F. Supp. 2d at 43–44 (assessing each email based on "context and content," and precluding introduction of emails where defendant did "not clearly demonstrate his adoption of the contents").

That is especially true here, where Mr. Chansley is directing his statements to a god and not to Mr. Crosby, thus alleviating Mr. Crosby of the social duty to pay attention through all of Mr. Chansley's statements. As made evident in GX 403 and 600, Mr. Crosby appears to lose focus towards the end of the prayer. In fact, during the portion of the prayer cited by the government in its trial brief—"[t]hank you for allowing the United States of America to be reborn," and "[t]hank you for allowing us to get rid of the communists, the globalists, and the traitors within our government"—

Mr. Crosby appears distracted by a person standing next to him and muttering to another person in the crowd. Although Mr. Crosby appears to regain focus and shout, "Amen," at the end of the prayer, it is unclear at that point what precisely Mr. Crosby "heard, understood[,] and acquiesced in."

The government fails to meet its burden under Rule 801(d)(2)(B), neglecting to show Mr. Crosby "understood and unambiguously assented" to *each* of Mr. Chansley's statements. *E.g., Beckham*, 968 F.2d at 52.

### III. Mr. Chansley's prayer is substantially more prejudicial than probative.

To the extent the Court admits Mr. Chansley's prayer, the prayer's "probative value" is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . undue delay, [and] wasting time." Fed. R. Evid. 403. Permitting the government to present the prayer as evidence of Mr. Crosby's intent requires the Court to dissect Mr. Crosby's religious beliefs. Even if Mr. Crosby "manifested" a "belief" in the "truth of Mr. Chansley's statements," those statements, as stated *supra*, are inherently abstract. To say Mr. Crosby believed America was "reborn" is to say nothing at all. This belief's scant probative value relies entirely on a highly prejudicial inference: Mr. Crosby believes America was "reborn," *so he must then believe—as a matter of subjective religious belief or personal conviction—that "rebirth" means overturning the election*, which in turn means he acted "corruptly." Such an inference stretches Mr. Crosby's "amens" beyond their intended meaning and invites judicial speculation into Mr. Crosby's deeply held religious beliefs.[2]

---

[2] This interpretation problem is even more difficult in this case than in the case of a traditional religious prayer. Mr. Chansley identified himself as the "QAnon Shaman." This nickname refers to the Q-Anon conspiracy, which arose in the far reaches of the internet and to which Mr. Crosby has never been linked. The defense understands that the word "Shaman" has its roots in ancient Japanese Shintoism, but can also refer to indigenous religious leaders. On top of this, Mr. Chansley led a prayer seemingly rooted in the Christian tradition. These layers of religious experience and conspiratorial indoctrination are virtually impossible to dissect. Moreover, reports suggest that Mr. Chansley was

7

The government invites a mini-trial on a tangential issue. If the government attempts to construe the meaning of Mr. Crosby's "amens," the government will force Mr. Crosby to defend himself by presenting evidence to contextualize his religious beliefs. Where the presentation of relevant evidence in this case is likely to last three days, the Court need not entertain additional evidence offering little probative value and threatening significant prejudice. *See, e.g., United States v. Fonseca*, 435 F.3d 369, 376 (D.C. Cir. 2006) (affirming trial court's exclusion of evidence where it "would have led to both delay and a 'mini-trial' on a collateral matter, two of the problems that Rule 403 seeks to avoid").

## **CONCLUSION**

The government seeks to project its own speculative conclusions onto Mr. Crosby's religious beliefs. It does so here by introducing GX 403 and 600 as video evidence that Mr. Crosby's "manifested" a "belief" in the "truth of Mr. Chansley's statements." The Court should exclude such evidence under Federal Rules of Evidence 801(d)(2)(B) and 403.

---

diagnosed with transient schizophrenia and bipolar disorder by prison doctors. *See* S. Lynch, "*Exclusive: 'Q-Anon' Shaman In Plea Negotiations After Mental Health Diagnosis*," Reuters (July 21, 2021), available at *https://www.reuters.com/world/us/exclusive-qanon-shaman-plea-negotiations-after-mental-health-diagnosis-lawyer-2021-07-23/*. Given this context—and putting aside the meaning Mr. Crosby ascribed to the prayer—it may not even be clear what Mr. Chansley meant by his own prayer.

8

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | THE DEFENDANT,<br>Richard Crosby, Jr. |
|  | OFFICE OF THE FEDERAL DEFENDER |
| Dated: November 30, 2023 | */s/ Daniel M. Erwin*<br>Daniel M. Erwin<br>Assistant Federal Defender<br>265 Church Street, Suite 702<br>New Haven, CT 06510<br>Phone: (203) 498-4200<br>Bar No.: ct28947<br>Email: Daniel_Erwin@fd.org |
| Assisting on the Brief: | Robert H. Hendricks<br>Research & Writing Attorney |

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on November 30, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            */s/ Daniel M. Erwin*
                                            Daniel M. Erwin