UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

vs.   CRIMINAL NO. 1:21-CR-458 (RJL)

RICHARD CROSBY, JR.   September 12, 2024

**DEFENDANT'S RENEWED MOTION TO DISMISS**

In light of the Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), Mr. Crosby respectfully renews his motion to dismiss Count One of the Indictment.

**FACTUAL BACKGROUND**

This case concerns the conduct of Mr. Crosby on January 6, 2021. As the Court is aware, on that day, Congress convened to certify votes cast in the 2020 Presidential election. While Congress convened, supporters of former President Donald Trump gathered in front of the White House for a speech by the former President. At Mr. Trump's behest to "walk down Pennsylvania Avenue" and "go[] to the Capitol," his supporters gathered outside of the Capitol. Some of the crowd then forced their way into the Capitol at 2:12 p.m., breaking windows and assaulting members of the U.S. Capitol Police. The breach of the Capitol forced members of Congress to evacuate the Capitol. After an initial throng of people overwhelmed security forces and entered the Capitol, more people followed behind. People continued to flow into the Capitol over the next hour.

Mr. Crosby was among this latter group of people to enter the Capitol. He entered the Capitol at 2:56 p.m., nearly 45 minutes after the first rioters breached the building. Alongside dozens of people gathered at the North Appointment Desk, Mr. Crosby brushed past security officers, walked upstairs to the second floor, and entered the Senate chamber. On the Senate floor, Mr. Crosby climbed the lectern, where he saw the Vice President's Bible and the certification voter rolls. He did not

manipulate either the Bible or voter rolls. He then joined in a brief prayer alongside other people who had entered the Senate chamber. Mr. Crosby exited the Senate chamber after five minutes. In total, Mr. Crosby remained in the Capitol for 14 minutes.

## PROCEDURAL BACKGROUND

Mr. Crosby was arrested on June 3, 2021. He was then indicted on July 9, 2021. The Indictment charged six counts: (1) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) ("Count One"); (2) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A); (5) disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 11. Of these six counts, only Count One constitutes a felony offense.

Mr. Crosby moved to dismiss Count One in a motion submitted on June 23, 2023. ECF No. 49. In his motion, Mr. Crosby principally advanced a claim of selective prosecution based on the government's decision to charge him with a felony obstruction offense. *Id.* In the alternative, Mr. Crosby argued the Court should dismiss Count One because Mr. Crosby's conduct did not fall within the conduct prohibited by 18 U.S.C. § 1512(c)(2). *Id.* Mr. Crosby, however, acknowledged the D.C. Circuit had rejected his alternative argument in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). *Id.* He nonetheless noted his argument to preserve it. The Court noted Mr. Crosby's alternative argument and denied his motion. ECF No. 56 at 2.

Before trial in the present case, the Supreme Court granted certiorari to hear an appeal of the D.C. Circuit's decision in *Fischer*. As a result, Mr. Crosby moved to continue the trial date pending

2

the Supreme Court's decision. ECF No. 81. The Court granted Mr. Crosby's motion, and it directed the parties to submit a status update within 15 days of the Court's decision. On June 28, 2024, the Supreme Court vacated and remanded the D.C. Circuit's decision in *Fischer*. *See* 144 S. Ct. 2176 (2024). Specifically, the Supreme Court limited the conduct giving rise to criminal liability under § 1512(c)(2). This motion followed.

## LEGAL STANDARDS

The accused may move to dismiss an indictment based on a "defect in the indictment or information." Fed. R. Crim P. 12(b)(3)(B)(v). An indictment is insufficient where the allegations, if proven, would not be sufficient to permit a jury to conclude the accused committed the criminal offense charged. *See United States v. Sanford*, *Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012). In assessing a motion to dismiss based on insufficiency, a court assumes as true only the allegations contained in the indictment. *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109–10 (D.D.C. 2016) (citing *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)). In other words, the court "cabins its analysis to the face of the indictment and, more specifically, the language used to charge the crimes." *Id.* at 110 (internal citations and quotations omitted); *see United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) ("Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury.").

## ARGUMENT

Mr. Crosby is charged with one count of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2). In the wake of the Supreme Court's recent decision in *Fischer*, criminal liability under § 1512(c)(2) is limited. Neither the actions charged in the

3

Indictment nor the universe of evidence previewed by the government in its trial papers establish the conduct now required to prove Mr. Crosby committed felony obstruction under § 1512(c)(2).

### I. The Supreme Court's opinion in *Fischer* limits the scope of felony obstruction under § 1512(c)(2).

Mr. Crosby's renewed motion relies upon a change of law and assumes,[1] for the sake of argument, the government's proffered version of the material facts. As stated *supra*, the Supreme Court's recent decision in *Fischer* represents the relevant change in law. In *Fischer*, the Supreme Court reversed a decision of the D.C. Circuit, which itself had previously reversed a trial court's order dismissing a count of felony obstruction under 18 U.S.C. § 1512(c)(2).

Like Mr. Crosby, Joseph Fischer, Edward Lang, and Garret Miller each entered the Capitol on January 6, 2021. *Fischer*, 64 F.4th at 332–33. Unlike Mr. Crosby, however, Messrs. Fischer, Lang, and Miller stormed the Capitol with hostile intent, each prepared to engage in violence—including "civil war." *Id.* Mr. Fischer encouraged members of the crowd to "charge" and "hold the line," and he pushed officers on his way into the Capitol. *Id.* at 332. Mr. Miller also pushed officers, and after the riot, he advocated on social media for the assassination of a U.S. Congresswoman and stated that a Capitol police officer deserved to die. *Id.* at 333. Mr. Lang, meanwhile, fought officers for over two hours, "repeatedly striking officers with a bat and brandishing a stolen police shield." *Id.* at 332–33.

---

[1] The Honorable Beryl A. Howell of the United States District Court for the District of Columbia recently granted two post-conviction motions based on the Supreme Court's decision in *Fischer*. *See United States v. Stedman*., No. CR 21-383, 2024 WL 3967389 (D.D.C. Aug. 28, 2024) (granting motion for release pending appeal); *United States v. Lyons*, No. CR 21-00079, 2024 WL 3898550, at *11 (D.D.C. Aug. 22, 2024) (granting motion for release pending resolution of habeas petition).

Among other charges, Messrs. Fischer, Lang, and Miller were each charged with felony obstruction under 18 U.S.C. § 1512(c)(2). Title 18, Section 1512(c) of the U.S. Code states as follows:

(c) Whoever corruptly—

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

Messrs. Fischer, Lang, and Miller moved to dismiss the felony obstruction charge, and the district court granted each motion. *Id.* at 334. The district court reasoned that subsection (c)(1) limits the scope of (c)(2), thus requiring a person to "have taken some action with respect to a document, record, or other object." 2022 WL 782413, *4 (D.D.C. Mar. 15, 2022) (quoting *United States v. Miller*, 589 F.Supp.3d 60, 78 (D.D.C. 2022)). Because the government made no allegations that the movants' impaired tangible evidence, the district court dismissed the respective felony obstruction charges.

On appeal, the D.C. Circuit reversed the district court's orders in a split decision. Interpreting the word "otherwise," the D.C. Circuit disagreed with the district court's "evidence-based" interpretation and instead held that the subsection (c)(2) covers "all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." 64 F.4th 329, 336 (2023). In other words, the catch-all penalizes obstructive conduct even when it is directed at an official proceeding, not just tangible evidence used in an official proceeding. In dissent, Judge Katsas suggested subsection (c)(1) narrows the language that comes after the "otherwise" in (c)(2). In his view, subsection (c)(2) only applies to conduct not listed in (c)(1) (*i.e.,* alter, destroy, mutilate, or

5

conceal) that nonetheless "affect[s] the integrity or availability of evidence" at an official proceeding. *Id.* at 363 (Katsas, J. *dissenting*).

In a majority opinion authored by Chief Justice Roberts, the Supreme Court reversed the D.C. Circuit's decision and, like the district court and Judge Katsas, explained that the scope of subsection (c)(2) is limited by the language of (c)(1). 144 S. Ct. at 2185–86. To accept the D.C. Circuit's interpretation would be "an elaborate pumpfake": "a list of four types of highly particularized conduct, performed with respect to a record, document, or object and 'with the intent to impair the object's integrity or availability for use in an official proceeding,' followed in the very next subsection—in the same sentence, no less—by a superseding prohibition on all means of obstructing, influencing, or impeding any official proceeding." *Id.* at 2185. The D.C. Circuit's broad interpretation would render superfluous the carefully-crafted delineation of penalties in § 1512 for different types of obstructive conduct. *Id.* at 2187. These different types of obstructive conduct, which are assigned proportionate penalties in other parts of the statute, would now fall within the catch-all's sweeping reach and subject a large swath of peaceful activity to (c)(2)'s 20-year maximum term of imprisonment. *Id.*

The Court instead cabined the reach of § 1512(c)(2). It concluded that to prove a violation, the government must establish a person "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Id.* at 2190. Put differently, the government has two avenues for proving liability. First, it can prove Mr. Crosby "impair[ed] the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1)." *Id.* at 2186 ("For example, it is possible to violate (c)(2) by creating false evidence—rather than altering incriminating evidence."). Or second, the government can prove Mr. Crosby "impair[ed] the availability or integrity of other

6

things used in an official proceeding beyond the 'record[s], document[s], or other object[s]' enumerated in (c)(1), such as witness testimony or intangible information." *Id.*

### II. Mr. Crosby did not impair the availability of any "thing" used in the certification process or encourage any other person to do the same.

To date, the government has not suggested Mr. Crosby impaired the availability of tangible evidence or "other things" used in the certification process. In full, the Indictment alleges that Mr. Crosby obstructed the certification process by "entering and remaining in the United States Capitol without authority and committing an act of civil disorder."[2] ECF No. 11. A close review of the government's pre-trial papers, including its trial brief and exhibit list, likewise reveals little about Mr. Crosby's obstructive conduct. On the government's reading, Mr. Crosby engaged in the following obstructive conduct:

- Mr. Crosby "moved past barriers to keep him off the Capitol grounds";

- "he entered the Capitol Building";

- "he pushed past police who pulled him back, only for the defendant to push through again";

- "he entered the Senate Chamber"; and

- he "climbed on the Senate dais," where he saw the certification voter rolls and Vice President Pence's Bible.

ECF No. 60 at 14. None of these actions, however, impaired "things" used in the certification process. For one, neither entering the Capitol or the Senate chamber, walking past an officer, nor climbing the Senate dais relate to tangible or intangible "things" used in the certification process. At best, the

---

[2] Notably, despite a substantial passage of time, the government has not attempted to procure a superseding indictment.

7

government may argue the relevant "things" impaired are the voter rolls or Vice President Pence's Bible. But the government cannot proffer any evidence that Mr. Crosby impaired these "things." To simply view the contents of either is not the same as to "alter," "destroy," "mutilate," "conceal," "impair," or the like. Moreover, neither a copy of the voter rolls nor a religious text are necessary "things" to use in a certification proceeding; these "things" are not evidence or documents with the power to influence the outcome of an election.[3]

Nor can the government advance on a theory that Mr. Crosby aided or abetted obstruction. To do so, the government must prove the following elements:

> (1) Others committed obstruction by committing each of the elements of the offense charged;
>
> (2) Mr. Crosby knew that obstruction of an official proceeding was going to be committed or was being committed by others;
>
> (3) Mr. Crosby performed an act or acts in furtherance of the offense;
>
> (4) Mr. Crosby knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing obstruction; and
>
> (5) Mr. Crosby did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

*See, e.g., United States v. Washington*, 12 F.3d 1128, 1136 (D.C. Cir. 1994). *See also United States v. Wilson*, 720 F. Supp. 2d 51, 60 (D.D.C. 2010) (reciting elements). Of course, "mere presence at the scene of a crime and awareness that a crime is being committed is insufficient to support a conviction for aiding and abetting." *United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993)

---

[3] Impairing a print-out of the voter rolls, for example, is akin to a member of a court gallery grabbing a copy of a publicly-available document left behind on counsel's table. To say touching a publicly-available document impairs the proceeding is to elevate form over substance.

8

(reversing conviction where appellant did not have advanced knowledge of brother's intent to assault officer).

Here, although Mr. Crosby was present on the Senate floor, the government has proffered no evidence to suggest he encouraged the impairment of physical or intangible evidence. A review of footage from the Senate floor confirms as much. *See* Gov't Ex. 402. Mr. Crosby entered the floor, climbed the dais, participated in a prayer, then left the chamber. At no point during his five minutes in the chamber did he attempt or encourage others to impair any "things" used in the certification process. He did not, for example, encourage others to steal the voter rolls, erase the electronic records of "yays" and "nays," or destroy any items the Senate clerks might use in conducting the certification. In fact, the government has not even alleged Mr. Crosby was aware the certification was incomplete.[4] In sum, neither the Indictment nor the government's proffered evidence establish that Mr. Crosby impaired, attempted to impair, or encouraged others to impair tangible or intangible "things" used in the certification process.

## CONCLUSION

For the foregoing reasons, Mr. Crosby respectfully asks this Court to dismiss Count One of the Indictment.

---

[4] In fact, the defense expects the record at trial would show Mr. Crosby believed the vote had already concluded when he entered the Capitol.

9

Respectfully submitted,

THE DEFENDANT,
Richard Crosby, Jr.

OFFICE OF THE FEDERAL DEFENDER

Dated: September 12, 2024    /s/ Daniel M. Erwin
Daniel M. Erwin
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct28947
Email: Daniel_Erwin@fd.org

Assisting on the Brief:    Robert H. Hendricks
Research & Writing Attorney

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on September 12, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        */s/ Daniel M. Erwin*
                                        Daniel M. Erwin